# Payment of Legal Fees in Connection With a Cabinet Member's Confirmation Hearings

Legal expenses incurred in connection with a Cabinet member's Senate confirmation hearings would be an appropriate subject of payment from funds authorized under the Presidential Transition Act, and may also, consistent with that Act, be paid from private sources.

Payment of legal fees incurred in connection with the confirmation process by a private foundation would not be considered to supplement a Cabinet member's salary in violation of 18 U.S.C. § 209, since the purpose and value of the services rendered were directed primarily to the government.

May 13, 1981

## MEMORANDUM OPINION

Our views have been requested on the propriety under 18 U.S.C. § 209 of a proposed payment by a private foundation[1] of legal fees incurred in connection with the Senate confirmation hearings of a member of the Cabinet. We understand that the lawyer was retained after consultations between the office of the President-elect and a Member of Congress, and that the lawyer's fee is not and was never intended to be the personal obligation of the nominee. We also understand that the lawyer's services were rendered before and during the nominee's confirmation hearings and that all services were rendered before the current Administration took office.

Our conclusions can be summarized as follows:

(1) The payment of legal fees incurred in connection with a confirmation hearing serves a legitimate governmental function cognizable under the Presidential Transition Act.

(2) The availability of public funding under the Transition Act does not preclude additional transition funding from private sources.

(3) Since the purpose and value of these legal services were directed primarily to the government, payment of the legal fee by a private party should not be considered a supplementation of the employee's salary for purposes of 18 U.S.C. § 209.

---

[1] According to its bylaws, the foundation is a nonprofit corporation established in the District of Columbia "to facilitate an orderly transfer of the power of the executive branch of the United States government from the Administration of the incumbent President to the Administration of the President-elect . . . ."

Before addressing the propriety of this proposed payment under § 209, we will examine it in light of the Presidential Transition Act of 1963, Pub. L. No. 88–277, 78 Stat. 153, *as amended* by Pub. L. No. 94–499, 90 Stat. 2380, October 14, 1976 (reprinted in note following 3 U.S.C. § 102). This Act promotes the orderly transfer of executive power during a presidential transition by authorizing the Administrator of the General Services Administration (GSA) to provide to a President-elect necessary services and facilities for use prior to January 20 in connection with preparations for the assumption of official duties. The GSA Administrator is specifically authorized, by § 3(a)(3) of the Transition Act, to pay expenses for the services of consultants,[2] and we see no reason why a legal consultant of this type could not have been paid with government funds pursuant to the Transition Act.[3]

The availability of Transition Act funds for a particular purpose does not necessarily preclude the funding of that same function from a private source. Although the Comptroller General has issued a considerable body of opinions generally repudiating the unauthorized augmentation of agency appropriations, *see, e.g.,* 46 Comp. Gen. 689 (1967), we do not think that those opinions are controlling in this situation. Neither the President-elect nor his transition staff are government employees,[4] and the Transition Act does not create a federal transition agency. Instead, it provides for the appropriation of money to a federal agency (GSA), to be disbursed according to certain criteria. There is no indication in the Transition Act or its legislative history that demonstrates a congressional intent to limit a President-elect's transition activities to those funded by the GSA transition appropriation.[5] In fact, when the Act was amended in 1976 to increase the amount of the authorization for transition funds, the House report quoted extensively from a GAO study that showed that in the past only a small portion of the actual transition expense was paid from the U.S. Treasury. In recommending that the appropriation be increased,[6] the GAO report stated:

---

[2] The Transition Act provides that consultants shall be paid pursuant to the Administrative Expenses Act of 1946, *as amended* (5 U.S.C. § 3109). Among other things, this Act places a ceiling on the salary rate paid to consultants This salary limitation clearly would apply if the lawyer's fees were paid by GSA.

[3] Had the same legal services been required after the Administration took office, they might have been provided by government lawyers or by private lawyers retained at government expense. Although the use of government funds or personnel to assist nominees in the confirmation process would depend upon the language and purpose of relevant appropriation statutes, as a general matter, such expenditures have been considered necessary government expenditures

[4] *See* § 36(a)(2) of the Transition Act *supra.* Of course, federal employees who are "detailed" to assist the President-elect in transition do retain their status as federal employees.

[5] There is little doubt that Congress did intend to limit *federal* transition expenditures to the amount authorized and appropriated to the GSA for this purpose. *See, e.g.,* S. Rep. No. 1322, 94th Cong , 1st sess. 2 (1976).

[6] It should be noted that even the increased appropriation would not have covered the full expenditures of the immediately preceding transition as reported by GAO

127

> It is our belief, however, that if the Presidential Transition
> Act is to function as intended, the Federal assistance must
> cover a *substantial part* of the Transition expenses.

Quoted in H. Rep. No. 1442, 94th Cong., 1st Sess. 4 (1976) (emphasis added). It is clear from the House report that Congress was aware of the custom of augmenting the transition appropriation with private funds. Since neither the Act nor its legislative history indicate an intent to eliminate this practice, and in light of the language adopted from the GAO report, we conclude that the public funding of transition was not intended to preclude private funding of transition activities.

We now turn to the question of whether the payment of this particular transition expense by a private group would violate 18 U.S.C. § 209. As you know, § 209 prohibits the payment or receipt from any source other than the government of any salary, contribution to or supplementation of salary, as compensation for the services of an officer or employee of the Executive Branch. The term salary is not defined by the statute.

One source of guidance on the meaning of "salary" in § 209 is the administrative interpretations given to the term by the various federal agencies. This administration case law tends to give fairly broad meaning to the term "salary," [7] but it does not supply an answer or a ready formula to apply in this case. In the final analysis, the determination whether a particular fringe benefit constitutes "salary" is a matter of judgment based on the full circumstances and intent of the parties. *See* 41 Op. Att'y Gen. 217 (1955).

In this case, it is our judgment that the proposed payment would not constitute a supplementation of the employee's salary. In reaching this conclusion we note that the foundation's primary purpose to assist the President-elect is evident from its very charter; that this purpose is a legitimate function for a private foundation; [8] and that the foundation is not, and has never been, in an employment relationship with the member of the Cabinet. Furthermore, we are convinced that any personal benefit to the employee from these legal services was incidental and secondary to the intended benefit conferred upon the President-elect and his Administration. In addition, if the government had provided these same legal services (*see* text accompanying footnote 3) it is doubtful that the value of the services would be considered part of the employee's salary.

---

[7] *See* discussion in B. Manning, Federal Conflict of Interest Laws 160–163 (1964), reviewing administrative decisions that define salary to include tuition fees, travel and professional expenses, and various honoraria *See also* 18 U.S C. § 209(e), which creates a narrow exception to the administrative decision that § 209 bars the payment of moving expenses by a former employer.

[8] As discussed previously, the foundation's purpose to assist the transition is not at odds with the Transition Act of 1963 or the principle of fixed appropriations. We also note that in Advisory Opinion 1980–97 the Federal Election Commission (FEC) concluded that the establishment of a Presidential Transition Trust to pay for pre-election transition activities was lawful under the Federal Election Campaign Act of 1971 and FEC regulations.

There is a line of Comptroller General decisions holding that an officer or employee has on his shoulders "the duty of qualifying himself for the performance of his official duties." 22 Comp. Gen. 460, 461 (1942). *See also* 51 Comp. Gen. 701 (1972) (disallowing the government's payment of bar admission fees) and 31 Comp. Gen. 465 (1952), 22 Comp. Gen. 243 (1942) (both disallowing government payment for pre-employment medical examinations). In our view, legal fees incurred in connection with the confirmation process are not analogous to these other personal costs of job qualification. As discussed earlier, the confirmation process involves overriding governmental interests of a magnitude not present in the decisions cited above. In addition, the cited Comptroller General decisions involve expenditures that benefit the employee in a personal capacity, while the legal services at issue will benefit the employee primarily in an official capacity.

For reasons stated above, we conclude that the proposed payment of legal fees by a private foundation would not violate 18 U.S.C § 209.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

129